**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

OSCAR J. MASTERS, JR., as Appointed
Representative of JOSEPH M. MASTERS,

                          Plaintiff,

      v.                                          No. 02-CV-0976
                                                     (DNH/DRH)

TOMMY THOMPSON, Secretary of the
United States Department of Health &
Human Services,

                          Defendant.

---

**APPEARANCES:**                              **OF COUNSEL:**

DAVID M. ZEVAN, ESQ.
Attorney for Plaintiff
One North Taylor Avenue
St. Louis, Missouri 63108

HON. GLENN T. SUDDABY                 WILLIAM H. PEASE, ESQ.
United States Attorney for the              Assistant United States Attorney
   Northern District of New York
Attorney for Defendant
100 South Clinton Street
Syracuse, New York 13261-7198

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

      Plaintiff Oscar J. Masters, Jr., the appointed representative of his son, Joseph M. Masters ("Masters"), brought this action challenging the determination of the Secretary of Health and Human Services denying payment for transportation costs on the ground that

---

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(d).

Beth Israel Hospital in Boston, Massachusetts was not the nearest appropriate facility to treat Masters. Docket No. 9. The Secretary cross-moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) on the ground that the decision was supported by substantial evidence. Docket No. 15.

For the reasons which follow, it is recommended that the plaintiff's motion be granted and the Secretary's motion be denied.

## I. Background

On April 1, 1996, Masters was admitted to the emergency room at Lourdes Hospital ("Lourdes") in Binghamton, New York. T. 104.[2] He complained of fever, hypotension, and respiratory insufficiency complicating a right lower extremity cellulitis. Id. Masters also suffered from a unique lymphatic disease that was not described in medical literature and eventually led to his demise. T. 66, 75. After Masters' two-week stay at Lourdes, Dr. Timothy Howland, Masters' treating physician, recommended he be transferred by ambulance to Beth Israel Hospital ("Beth Israel") in Boston approximately 300 miles away. T. 97-98. On April 16, 1996, Masters was transferred by ambulance to Beth Israel. T. 361.

Subsequent to Masters' transfer to Beth Israel, Superior Ambulance Service submitted a bill for services to the Medicare carrier for $2,055. Id. The claim was initially denied for failure to document the medical necessity of the transfer by ambulance. T. 360. After additional documentation was submitted, the Medicare carrier granted partial payment to Masters but denied full payment because there was no evidence in the record as to why the

---

[2] "T." followed by a number refers to the administrative transcript filed by the Secretary. Docket No. 5.

treatment could not have been performed locally. T. 356-57. This left $1,644 in controversy. T. 356.

The Medicare carrier's determination was appealed to a hearing officer and was affirmed on December 12, 1996. T. 350-52. Plaintiff filed a timely request for review of the hearing officer's determination with an Administrative Law Judge ("ALJ"). T. 354. On December 23, 1998, after concluding that Wilson Memorial Hospital ("Wilson Memorial") in Johnson City, New York was the nearest appropriate facility, ALJ Tarrant decided "that an allowance is to be made for the ambulance services provided to [Masters] on April 16, 1996, based upon the charge allowable from Lourdes Hospital in Binghamton . . . to Wilson Memorial . . ., a distance of six miles." T. 58. Plaintiff appealed the ALJ's decision to the Appeals Council ("Council"). T. 23-24. On May 22, 2002, the Council denied plaintiff's request for review. T. 1-2. This action followed.

## II. Standard of Review

In reviewing a final decision of the Secretary, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. Abbott Radiology Assocs. v. Shalala, 160 F.3d 137, 139 (2d Cir. 1998). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); see also Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000).

"In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient

specificity to allow a court to determine whether substantial evidence supports the decision." Prentice v. Apfel, No. 96 Civ. 851(RSP), 1998 WL 166849, at *3 (N.D.N.Y. Apr. 8, 1998) (citing Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)).  The court, however, cannot substitute its interpretation of the administrative record for that of the Secretary if the record contains substantial support for the ALJ's decision. Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998).  If the Secretary's findings are supported by substantial evidence, they are conclusive. Bush v. Shalala, 94 F.3d 40, 45 (2d Cir. 1996).  "Ultimately, . . . the claimant bears the burden of proving [their] entitlement to Medicare coverage." Keefe v. Shalala, 71 F.3d 1060, 1062 (2d Cir. 1995) (citation omitted).

### III.  Discussion

The relevant regulations state that Medicare Part B covers all of the beneficiary's expenses for ambulance transportation. See 42 C.F.R. § 410.40(c) (1996).  However, payments are limited to the amount that would be paid for transportation "[t]o an appropriate hospital. . . in whose locality the beneficiary is located or, if the beneficiary is not in the locality of an appropriate hospital . . ., to the nearest appropriate hospital . . . ." Id. § 410.40(e)(1).  An "appropriate hospital" is defined as a hospital "that is capable of providing the required level and type of care for the patient's illness or injury and, in the case of a hospital, has available the type of physician or physician specialist needed to treat the patient's condition." Id. § 410.40(a)(3).  The regulations are clear that travel to a more distant hospital will not be reimbursed simply because a facility is better equipped. See T. 281 (Medical Carriers Manual § 2120.3.F).

Here, plaintiff contends that Beth Israel in Boston was the "nearest appropriate hospital" –

4

in fact, the only appropriate hospital – because Masters' rare, undocumented illness required specialized physicians that were not available locally. To support this contention, plaintiff provided letters from Dr. Howland, Masters' treating physician at Lourdes, and Dr. Slavin, his doctor at Beth Israel. The ALJ received these letters and also sought the opinion of an independent medical expert, Dr. Raul Grinberg. Plaintiff challenges the ALJ's decision on the grounds that Dr. Grinberg was not qualified to make a proper determination of the appropriate hospital for Masters and that granting any weight to his opinion was in error.

Although not raised by plaintiff, the Secretary argues that the "treating physician rule" articulated in Social Security disability cases does not apply in the Medicare context.[3] While it is not necessary here to reach the question of whether the treating physician rule applies, an analysis of the relevant case law is warranted to determine what weight, if any, should be given to Masters' treating physicians' opinions.

The Secretary correctly points out that the Second Circuit has never explicitly held that the rule applies to Medicare cases, only stating that it is "more than possible that some version of the treating physician rule could well apply in Medicare cases." Keefe, 71 F.3d at 1064. However, the Second Circuit has indicated that substantial weight should be given to the opinion of the beneficiary's treating physician, suggesting that while

> 'the considerations bearing on the weight to be accorded a treating physician's opinion are not necessarily identical in the [Social Security] disability and Medicare contexts, we would expect the Secretary to place significant reliance on the informed opinion of a treating physician and either to apply the treating physician rule, with its component of 'some extra weight' to be accorded to that

---

[3] "In Social Security disability cases, the 'treating physician rule' generally requires HHS [Health and Human Services] to give controlling weight to the medical opinion of an applicant's treating physician." Keefe, 71 F.3d at 1064; see also 20 C.F.R. § 404.1527 (2003).

5

> opinion, . . . or to supply a reasoned basis, in conformity with statutory purposes, for declining to do so.'

Id. (quoting New York v. Sullivan, 927 F.2d 57, 60 (2d Cir. 1991) (internal citation omitted)).

Two separate district courts in this circuit have come to different conclusions regarding whether the treating physician rule applies to Medicare cases. Compare Murphy v. Sec'y of HHS, 62 F. Supp. 2d 1104, 1107 (S.D.N.Y. 1999) (appearing to agree with the Secretary that the treating physician rule does not apply in the Medicare context because a different rule of proof was validly codified), with Klementowski v. Sec'y, Dep't of HHS, 801 F. Supp. 1022, 1026 (W.D.N.Y. 1992) (holding that there is "no prohibition against the applicability of the treating physician rule to Medicare cases."). These cases also came to different conclusions as to whether there was substantial evidence to uphold the ALJ's denial of reimbursement to the plaintiffs for ambulance transfers to hospitals which the plaintiffs believed were the nearest appropriate facilities.

In Murphy, plaintiff sought reimbursement for a transfer by air ambulance to a hospital nearly 1,500 miles away. Murphy, 62 F. Supp. 2d at 1106. In denying reimbursement, the ALJ stated that "it strains credibility to think that no hospital or medical center in the 1500 miles between Naples, Florida and New York City was able to offer appropriate care of a patient with difficult-to-diagnose heart problems." Id. at 1108. The ALJ cited the fact that none of plaintiff's treating physicians opined that Columbia Presbyterian Hospital ("Columbia") in New York City had any treatment advantage over a hospital located closer to Naples, Florida. Id. at 1107. The only advantages mentioned by plaintiff's treating physicians were that "(1) plaintiff's medical records were at Columbia; (2) plaintiff's personal physician had admitting privileges there; and (3) plaintiff's family would be close by." Id.

6

These reasons alone did not satisfy the district court and it affirmed the ALJ's denial of reimbursement for the air ambulance expenses. Id. at 1107-08.

However, in a footnote, the court appears to cite a situation that would have legitimized the transfer, stating "the record shows that plaintiff never had any extraordinary medical condition that the staff at Columbia Presbyterian had treated in the past, and does not demonstrate that [plaintiff's] personal physician had any expertise in the type of illness that apparently caused [plaintiff's] demise." Id. at 1107 n.1. Here, Masters undocumented medical illness certainly qualifies as an "extraordinary medical condition" and the doctors at Beth Israel, especially Dr. Slavin, were identified by Masters' treating physician as the only doctors in the region with any expertise in treating his rare illness. Further, unlike the treating physicians in Murphy, Masters' physicians explicitly stated the necessity of his transfer by ambulance to Beth Israel.

In Klementowski, plaintiff sought reimbursement for transportation by air ambulance from Buffalo, New York to the Cleveland Clinic in Cleveland, Ohio. Klementowski, 801 F. Supp. at 1023. The ALJ denied reimbursement, finding that there was no evidence to support the plaintiff's contention that the medical procedure was required to be performed in Cleveland and not in or near Buffalo. Id. In reaching the decision, the ALJ relied simply on an unsigned note by a reviewing nurse at the Buffalo hospital that indicated that the procedure could have been provided in or near Buffalo. Id. at 1028. The ALJ also cited the admission report from the Cleveland Clinic that appeared to indicate that the plaintiff was stable upon arrival at the clinic. Id. However, unlike the instant case, the ALJ did not seek an independent medical expert opinion.

The magistrate judge recommended reversing the ALJ's determination, finding that the

7

ALJ's decision was not supported by substantial evidence. Id. at 1023. The district court adopted in full the conclusions contained in the magistrate judge's decision. Id. at 1029. Citing the "common sense" conclusion of the magistrate judge, the district court concluded that a physician would not "knowingly take a risk of endangering his patient by ignoring immediately and locally available emergency care." Id. at 1028. Although there was no independent medical expert opinion to support the ALJ's determination in Klementowski, the "common sense" approach used by the magistrate judge is applicable to this case.

Here, the question is whether there is substantial evidence to support the ALJ's denial of reimbursement for an ambulance transfer from Binghamton to Boston. In his decision, the ALJ relied heavily on the independent medical expert report of Dr. Grinberg in finding that Beth Israel was not the nearest appropriate facility because Wilson Memorial, which is only six miles from Lourdes, "was capable of providing the appropriate level and type of care for the beneficiary's illness and had available the type of physicians or specialists needed to treat the beneficiary's condition." T. 57. The ALJ stated that Masters had failed to demonstrate that Wilson Memorial was incapable of providing the requisite care to treat his condition, finding that "[w]hile Beth Israel Hospital in Boston may have been the best hospital to care for the beneficiary, 42 CFR [§] 410.40(a)(3) only requires that the hospital be '**capable**' of treating the beneficiary's condition." T. 56-57 (emphasis in original). Regarding the opinions of Drs. Howland and Slavin, the ALJ stated that "[w]hile it may have been prudent to follow the advice of the beneficiary's treating physician to send him to the Beth Israel Hospital, this advice by itself does not transform the Beth Israel Hospital to the nearest appropriate facility as defined by Regulation 410.40(a)(3)." T. 56 (emphasis in original).

However, the ALJ appears to have misunderstood Masters' contention that Beth Israel

8

was the most "appropriate hospital" when he stated that the "regulations provide for reimbursement to the nearest '<u>appropriate</u> hospital'[,] not to the hospital determined by the treating physician to be the 'best' hospital available to treat the beneficiary's illness."  T. 56-57 (emphasis in original).  In their letters, Masters' treating physicians do not state that Beth Israel was the "best" hospital. They state that the physicians at Beth Israel, particularly Dr. Slavin, were "the <u>only</u> individuals that [they] could locate in this region of the country that have any experience in this type of lymphatic disease."  T. 66 (emphasis added).

Dr. Howland also concedes that the procedures undergone at Beth Israel could have been performed at a local or regional facility.  However, Masters insists that it is not the procedures that are at issue but instead whether any local or regional doctor could have properly treated Masters' undocumented illness.  Dr. Howland stated that "[i]t is true that the ancillary procedures [Dr. Grinberg] referred to [in] his evaluation could all have been performed nicely here in Binghamton.  It is absolutely untrue that the clinical judgments required to evaluate the exceedingly difficult clinical prognosis could be provided locally."  T. 75.  Dr. Grinberg opined that the physicians at Beth Israel "could have been available for a telephone consultation if their expertise was an absolute necessity."  T. 85.  In response to this suggestion, Dr. Howland remarked that "[i]t is an insult to the competent practice of medicine to suggest that such an opinion could have been attained by a telephone call."  T. 75.  Considering the extraordinary circumstances surrounding Masters' rare, undocumented illness, it seems unreasonable and against common sense to conclude that a diagnosis could appropriately have been attained over the telephone.

Following the Second Circuit's expectation that significant reliance be given to the informed opinion of a treating physician, appropriate hospital was Beth Israel in Boston.  <u>See</u>

9

Keefe, 71 F.3d at 1064. Although the ALJ provides evidence that the procedures undergone by Masters could have been performed locally, neither he nor Dr. Grinberg provides any evidence that Wilson Memorial or any other local or regional hospital had "the type of physician or physician specialist needed to treat [Master's] condition." 42 C.F.R. § 410.40(a)(3). There is some evidence here to support the ALJ's conclusion, but no "reasonable mind" could conclude that the findings of the ALJ are supported by substantial evidence. See Shaw, 221 F.3d 131.

## IV. Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that plaintiff's motion be **GRANTED** and the defendants motion be **DENIED**; and

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

DATE: July 24, 2006
       Albany, New York

*David R. Homer*
United States Magistrate Judge